# Exhibit 6



# APPEAL



**U.S. Department of Justice
United States Parole Commission**

Name  John Friedlander

Register No.  05167-085          Institution  Lompoc USP

I received a Notice of Action dated  June 29, 2022          and appeal that decision.

*John B. McEntire, IV*          (on John Friedlander's behalf, and as his legal representative).          July 26, 2022

*(Signature)*          *(Date)*

**INSTRUCTIONS:**

**Procedures.**  The appeal must be mailed to the Commission within 30 days from the date on the Notice of Action.  The permissible grounds for appeal are described below.  On page two of this form you must provide a brief summary of all the grounds for your appeal.  On page three of this form you must provide a statement of the facts and reasons in support of each ground identified in your summary. Continuation pages are permitted for longer appeals. You may provide any additional information in an addendum to your appeal.  The Commission may refuse to consider any appeal which does not follow this format.  The appeal will be decided on the record, and you will be notified of the Commission's decision through a Notice of Action. Do not submit multiple copies of your appeal, and do not submit documents which are in the Commission's file.

**Mailing address.**  You should mail the appeal to U.S. Parole Commission, Appeals Unit, 90 K Street, N.E., 3rd Floor, Washington, D.C.  20530.

**Permissible grounds for appeal.**

(a) The Commission relied on erroneous information, and the actual facts justify a different decision.

(b) There was significant information in existence but not known to me at the time of the hearing, and a different decision would have resulted if the information had been presented.

(c) The Commission made a procedural error in my case, and a different decision would have resulted if the correct procedure had been followed.

(d) The Commission applied a statute or regulation incorrectly (<u>e.g.</u>, in determining my period of imprisonment as a supervised release violator, and/or my further term of supervised release).

(e) The Commission made an error in applying the guidelines (error in offense severity rating, salient factor score, and/or calculating time in custody).

(f) A decision outside the guidelines was not supported by the reasons or facts stated in the Notice of Action.

(g) There are especially mitigating circumstances in my case which justify a different decision.

## SUMMARY OF GROUNDS FOR APPEAL

**Instructions:** Briefly describe the error which you believe to have occurred, or the specific reason for the Commission to give you a different decision.  You do not need to repeat the "ground for appeal" (from Page 1) which applies.  Try to list your most important grounds for appeal first.

**Ground One**: (g) There are especially mitigating circumstances which justify a different decision.

Please see the attached addendum for the summary of this appeal ground.

_____

_____

_____

_____

**Ground Two**: (c) - The Commission made a procedural error, and a different decision would have

resulted if the correct procedure had been followed.

Please see the attached addendum for the summary of this appeal ground.

_____

_____

_____

**Ground Three**: (d) - The Commission applied a statute or regulation incorrectly.

Please see the attached addendum for the summary of this appeal ground.

_____

_____

_____

_____

**Ground Four**: (a) The Commission relied on erroneous information, and the actual facts justify a

different decision.

Please see the attached addendum for the summary of this appeal ground.

_____

Please see the attached addendum for Grounds Five and Six and the summary of these appeal grounds.

_____

**Note:** You may present as many grounds for appeal as you believe necessary. If you have more grounds for appeal than you can summarize in the space provided, you may complete your summary on a continuation page.

An electronic version of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc.

Page 2 of 4                                    **Parole Form I-22** (February 2013)

**STATEMENT OF FACTS AND REASONS IN SUPPORT OF EACH GROUND FOR APPEAL**

**Instructions:** Please present your grounds for appeal in the order in which they appear in your summary. For each ground of appeal, use the following format, first stating the facts that are relevant to deciding the ground you have identified, and then the reasons why you believe the Commission erred and/or should make a different decision. Use continuation pages in the same format.

**Ground One**:  (Circle the applicable ground for appeal from Page 1:    a    b    c    d    e    f    g ).

**Facts:**  Please see the attached addendum for the Facts and Reasons in support of this appeal ground.

_____

_____

_____

_____

_____

**Reasons:**  Please see the attached addendum for the Facts and Reasons in support of this appeal ground.

_____

_____

_____

_____

_____

**Ground Two:**  (Circle the applicable ground for appeal from Page 1:    a    b    c    d    e    f    g ).

**Facts:**  Please see the attached addendum for the Facts and Reasons in support of this appeal ground.

_____

_____

_____

_____

**Reasons:** Please see the attached addendum for the Facts and Reasons in support of this appeal ground.

_____

_____

_____

_____

An electronic version of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc.

Page 3 of 4                                                                **Parole Form I-22** (February 2013)

**Ground Three**:  (Circle the applicable ground for appeal from Page 1:   a   b   c   [d]   e   f   g ).

**Facts:** Please see the attached addendum for the Facts and Reasons in support of this appeal ground.

_____

_____

_____

_____

_____

**Reasons:** Please see the attached addendum for the Facts and Reasons in support of this appeal ground.

_____

_____

_____

_____

_____

_____

**Ground Four:**  (Circle the applicable ground for appeal from Page 1:   [a]   b   c   d   e   f   g ).

**Facts:** Please see the attached addendum for the Facts and Reasons in support of this appeal ground.

_____

_____

_____

_____

_____

**Reasons:** Please see the attached addendum for the Facts and Reasons in support of this appeal ground.

_____

_____

_____

Please see the attached addendum for the Facts and Reasons in support of Grounds Five and Six.

_____

_____

_____

An electronic version of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc.

Page 4 of 4                                    **Parole Form I-22** (February 2013)

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

### Introduction

This Addendum supplements John Friedlander's I-22 (Appeal Form), and is organized as follows:

- The first section (Summary of Grounds for Appeal) outlines Mr. Friedlander's six grounds for appeal, as well as the generalized reasons supporting those grounds.
- The second section (Statement of Facts and Reasons in Support of Each Ground for Appeal) unpacks each ground for appeal in greater detail, including the individualized facts and reasons supporting the appeal.

At various points throughout this Addendum, Mr. Friedlander references a memorandum and supporting materials that was submitted to the Parole Commission back on March 28, 2022. This memorandum (titled "Memorandum Supporting Application for Mandatory Parole) was a 31-page document outlining Mr. Friedlander's basis for parole, and included 18 attachments (Exhibits A through R). This was the document provided to the Commission, but never reviewed by Hearing Examiner Whitmer before (or during) the June 8, 2022 parole hearing.

Beyond this Addendum, undersigned counsel has also prepared and attached a Declaration, which includes additional facts relevant to this appeal.

### Summary of Grounds for Appeal

> **Ground One**: (g) There are especially mitigating circumstances in my case which justify a different decision.

These circumstances include, but are not limited to:

1. the significant facts explaining (and mitigating) Mr. Friedlander's offense conduct;
2. the reasons Judge Quackenbush gave for sentencing Mr. Friedlander as an adult—primarily, that the maximum possible juvenile sentence (less than 48 months) would not suffice;
3. Judge Quackenbush's expectation (at the time of sentencing) was that Mr. Friedlander would receive parole in the future, and Judge Quackenbush's found it inappropriate to lock Mr. Friedlander up forever without the chance of release upon rehabilitation;
4. the misinformation from psychologists that tainted Mr. Friedlander's sentencing proceedings;
5. the newly discovered evidence that Clarence White, the victim of Mr. Friedlander's offense, forgave Mr. Friedlander and hoped Mr. Friedlander would be paroled;
6. Dr. Kele Kirschenbaum's professional and scientific conclusions that Mr. Friedlander poses a low risk of recidivism; shows genuine remorse and self-reflection; is genuinely committed to sobriety and to living a law-abiding life; and was wrongfully portrayed by medical and psychological experts at his original sentencing;

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

7. the improved understanding in modern psychology (and criminal law) of juvenile brain development that reveals how juvenile offenders tremendously differ from adult offenders in terms of maturity, susceptibility, salvageability, and culpability;

8. the facts that explain and mitigate Mr. Friedlander's institutional infractions; and

9. the evidence showing that Mr. Friedlander is, more likely than not, actually innocent of the alleged 2020 DHO infraction; and

10. the evidence of positive institutional adjustment; and

11. the evidence showing Mr. Friedlander has dramatically changed in the past eight years, including his absolute commitment to sobriety and nonviolence, as well as the sacrifices he has made to maintain these commitments;

12. the overwhelming disparity in the sentence Mr. Friedlander had served to date relative to his co-conspirators' sentences, the maximum possible sentence had he been sentenced under the Guidelines, and the Commission's own aggregate guidelines sentence; and

13. the robust and comprehensive release plan that awaits Mr. Friedlander at the Adult & Teen Challenge Program.

> **Ground Two**: (c) The Commission made a procedural error in my case, and a different decision would have resulted if the correct procedure had been followed.

In conducting Mr. Friedlander's hearing, the Commission violated the following procedural requirements:

1. 18 U.S.C. § 4207 and 28 C.F.R. §§ 2.14, 2.19(a);
2. 28 C.F.R. § 2.19(c);
3. 28 C.F.R. § 2.36;
4. 18 U.S.C. §§ 4206(a), (c) and 28 C.F.R. § 2.20;
5. 18 U.S.C. § 4206(b); and
6. 18 U.S.C. § 4208(h) and 28 C.F.R. § 2.14.

Had the Commission followed these procedures, it would have granted parole.

> **Ground Three**: (d) The Commission applied a statute or regulation incorrectly.

The Commission misapplied the statutory and regulatory standard for granting mandatory parole, contained in 18 U.S.C. §§ 4206, 4208 and 28 C.F.R. §§ 2.14, 2.18, 2.19, 2.36, and it consequently erred in finding that the mandatory-parole presumption had been rebutted.

> **Ground Four**: (a) The Commission relied on erroneous information, and the actual facts justify a different decision.

In denying parole, the Commission relied on information that Mr. Friedlander disputes. Importantly, Mr. Friedlander submitted information and evidence supporting his position and indicating how the Commission's other information was erroneous. The Commission did not

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

review Mr. Friedlander's submitted information, yet still relied on the erroneous information to deny parole. The actual facts justify a different decision—that Mr. Friedlander should be paroled.

| **Ground Five**: (e) The Commission made an error in applying the guidelines. |
| --- |

The Commission last calculated Mr. Friedlander's aggregate guidelines range in 2012, but gave no explanation for how it arrived at that figure or whether it had incorporated a required non-numerical mitigating factor. Mr. Friedlander had already served 77.5 months more than that guidelines range when it was calculated. The Commission has repeatedly failed to calculate and apply the guidelines in accordance with applicable statutes and regulations since 2012, and again failed to do so on June 8, 2022.

| **Ground Six**: (f) A decision outside the guidelines was not supported by the reasons or facts stated in the Notice of Action. |
| --- |

Mr. Friedlander had already overserved his 2012 guidelines range at the time that range was calculated. In the 10 years since, he has only continued to overserve that guidelines range. The Commission has repeatedly failed to explain the reasons or facts supporting an above-guidelines sentence, and again failed to do so on June 8, 2022.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

**Statement of Facts and Reasons in Support of Each Ground for Appeal**

> ***Ground One:*** (g) There are especially mitigating circumstances in my case which justify a different decision.

***Facts/Reasons:***

1. On March 28, 2022, Mr. Friedlander (through counsel) submitted materials to the Commission explaining the various bases for parole. Right before the hearing began, Mr. Friedlander (through counsel) learned the Commission did not review these materials before the hearing. The Commission also did not review this materials before denying Mr. Friedlander parole right after the hearing.

2. Staff members from Lompoc USP were present at Mr. Friedlander's June 8, 2022, hearing. However, the Commission did not allow them to speak on Mr. Friedlander's behalf and did not consider their statements in denying Mr. Friedlander parole.

3. Mr. Friedlander's materials, as well as the Lompoc USP staff members' statements contained evidence of especially mitigating circumstances in Mr. Friedlander's case that justified Mr. Friedlander's release on parole, including but not limited to the following circumstances:

   a. The significant facts explaining (and mitigating) Mr. Friedlander's offense conduct, including:

      i. Mr. Friedlander's overwhelming childhood history of physical, emotional, and mental trauma, abuse, and neglect;

      ii. Mr. Friedlander's developmental disabilities; and

      iii. The catalysts for Mr. Friedlander's offense: heavy intoxication, peer pressure, and the mistaken belief that his victims, Clarence and Gloria White, had caused harm to his sole-surviving natural sister.

   b. The reasons Judge Quackenbush gave for sentencing Mr. Friedlander as an adult—primarily that the maximum possible juvenile sentence (less than 48 months) would not suffice.

   c. Judge Quackenbush's expectation, at the time of sentencing, that Mr. Friedlander would receive parole in the future.

   d. Judge Quackenbush's belief, voiced at the time of sentencing, that it was inappropriate to lock Mr. Friedlander up forever without the chance of release upon rehabilitation.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

   e.  The misinformation that tainted Mr. Friedlander's sentencing proceedings, including:

       i.  the rushed and scientifically unsound opinions given by medical and psychological experts that Mr. Friedlander was irredeemable; and

      ii.  the superficial investigation into Mr. Friedlander's significant history of abuse, trauma, and neglect.

   f.  The newly discovered evidence that Clarence White, the victim of Mr. Friedlander's original offense, forgave Mr. Friedlander and hoped he would be paroled.

   g.  Dr. Kele Kirschenbaum's professional and scientific conclusions that:

       i.  Mr. Friedlander poses a low risk of recidivism;

      ii.  Mr. Friedlander shows genuine remorse and self-reflection;

     iii.  Mr. Friedlander is genuinely committed to sobriety and to living a law-abiding life; and

     iv.  the medical and psychological experts at Mr. Friedlander's original sentencing wrongfully portrayed Mr. Friedlander's character and rehabilitative potential to the sentencing court.

   h.  The improved understanding in modern psychology (and criminal law) of how juvenile offenders differ tremendously from adult offenders. Namely, that juvenile offenders are—

       i.  more affected by childhood trauma through delayed development of maturity;

      ii.  more susceptible to negative influences and outside peer pressures;

     iii.  more salvageable—i.e., more likely to successfully rehabilitate; and

     iv.  less culpable for their own actions because, as juveniles, their offenses tend to reflect their environment and heavy dependence on adults—not their own, autonomous choices.

   i.  Facts explaining and mitigating the weight of Mr. Friedlander's institutional infractions through 2014, including his overwhelming despair, loneliness, unaddressed psychological trauma, and his consequent abuse of substances to deal with these issues.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

j.  Evidence showing that Mr. Friedlander is, more likely than not, actually innocent of the alleged 2020 DHO infraction (which is the only specific infraction cited in the 2022 Notice of Action).

k.  Evidence showing positive institutional adjustment, which was contained in Mr. Friedlander's materials and which the Lompoc USP staff members would have addressed and corroborated had they been given an opportunity to speak, including:

i.  many hours of rehabilitative programming;

ii.  positive reviews from job supervisors;

iii.  That there are many inmates that give the BOP staff grief, but Mr. Friedlander isn't one of them; and

iv.  Mr. Friedlander's self-referrals to solitary confinement when he feels unsafe around other inmates.

l.  Evidence showing Mr. Friedlander has dramatically changed in the past eight years, including:

i.  his absolute commitment to sobriety and nonviolence, as well as helping other inmates find similar paths; and

ii.  the sacrifices he has made in recent years to maintain these commitments, including long periods in solitary confinement and severe and permanent injuries from his refusal to defend himself against other inmates.

m.  The overwhelming disparity between:

i.  the sentence Mr. Friedlander had served to date (423 months as of June 8, 2022) and the sentence his co-conspirator received (84 months);

ii.  the sentence Mr. Friedlander had served to date (423 months) and the maximum possible sentence he would have received had his offense occurred just nine months later (151 months); and

iii.  the sentence Mr. Friedlander had served to date (423 months) and the U.S. Parole Commission's most recent aggregate guidelines sentence calculations (222 months, last calculated in 2012); and

n.  The robust and comprehensive release plan that awaits Mr. Friedlander at the Adult & Teen Challenge Program, which includes housing, continued substance abuse and mental health treatment, spiritual practice, job training, and a safe and supportive community.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

---

***Ground Two***: (c) The Commission made a procedural error in my case, and a different decision would have resulted if the correct procedure had been followed.

**The Commission violated 18 U.S.C. § 4207 and 28 C.F.R. §§ 2.14, 2.19(a).**

*Facts:*

1. 28 C.F.R. § 2.14(a) provides that the purpose of a statutory interim hearing required by 18 U.S.C. § 4208(h) is to consider any significant developments or changes in status that have occurred since the last parole hearing.

2. 28 C.F.R. § 2.19(a) states that "In making a parole[] determination the Commission ***shall*** consider, if available and relevant," a list of items including "(1) Reports and recommendations which the staff of the facility in which such prisoner is confined may make"; "(4) Recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge"; "(5) Reports of physical, mental, or psychiatric examination of the offender"; and "(6) A statement, which may be presented orally or otherwise, by any victim of the offense for which the prisoner is imprisoned about the financial, social, psychological, and emotional harm done to, or loss suffered by such victim" (emphasis added). 18 U.S.C. § 4207 requires the U.S. Parole Commission to consider these same materials in making a parole determination.

3. 28 C.F.R. § 2.19(b) states that the Commission "***shall***" also consider "such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may reasonably be available" (emphasis added). 18 U.S.C. § 4207 also requires the U.S. Parole Commission to consider these same materials in making a parole determination.

4. 28 C.F.R. § 2.19(b)(2) recommends that all materials "***should***" be submitted to the Commission by the first day of the month preceding the month of the scheduled hearing docket "[t]o permit adequate review of information concerning the prisoner" (emphasis added).

5. Mr. Friedlander and his attorney, Mr. McEntire, submitted a hearing memorandum and supporting materials to the Parole Commission on March 28, 2022, which contained the following information:

   a. "Recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge";

   b. "Reports of physical, mental, [and] psychiatric examination of the offender;"

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

   c.  "A statement [] by any victim of the offense for which the prisoner is imprisoned about the financial, social, psychological, and emotional harm done to, or loss suffered by such victim";

   d.  a statement and evidence reflecting Mr. Friedlander's significant rehabilitation efforts and progress while in prison;

   e.  a statement and evidence reflecting Mr. Friedlander's actual innocence of the DHO level infraction he allegedly committed in 2020; and

   f.  a statement and evidence reflecting Mr. Friedlander's release plan and admission into the Adult & Teen Challenge Program.

6. These submissions contained information about significant developments or changes in status since Mr. Friedlander's last parole hearing. Accordingly, these submissions contained information relevant to the June 8, 2022 statutory interim hearing's purpose.

7. Mr. Friedlander and his attorney, Mr. McEntire, submitted the above-described memorandum and materials to the Parole Commission by email to Hearing Coordination Specialist Garth Ambersley on March 28, 2022.

   a.  This submission was made well in advance of the recommended deadline in 28 C.F.R. § 2.19(b)(2) (which would have recommended submission of materials by May 1, 2022).

   b.  Mr. Ambersley asked Mr. Friedlander and Mr. McEntire to submit "all relevant documents" for the parole hearing by the week of March 30, 2022, to allow Mr. Ambersley adequate time to "prepare [Mr. Friedlander's] pre-hearing package for the Hearing Examiner." Mr. Friedlander and Mr. McEntire submitted all materials to Mr. Ambersley days before this deadline.

8. Before going on the record during the June 8, 2022, hearing, Hearing Examiner Chris Whitmer stated he had not received or reviewed Mr. Friedlander's submitted memorandum or supporting materials.

   a.  At that time, Mr. McEntire offered Hearing Examiner Whitmer a complete, printed copy of the memorandum and supporting materials for review before the hearing.

   b.  Hearing Examiner Whitmer declined to accept or review that complete, printed copy.

9. Two staff members from Lompoc USP, where Mr. Friedlander is confined, appeared at the June 8, 2022 hearing with Mr. Friedlander. Hearing Examiner Whitmer gave no opportunity for the two Lompoc USP staff members to speak.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

***Reasons:***

1. The Commission violated 18 U.S.C. § 4207 and 28 C.F.R. §§ 2.14, 2.19 by failing to fulfill its statutory and regulatory duty to review certain relevant and available information before making a parole determination.

2. Had the Commission properly discharged its duties under 18 U.S.C. § 4207 and 28 C.F.R. §§ 2.14, 2.19, it would have been aware of, and made a different decision based on:

   a. The significant facts explaining (and mitigating) Mr. Friedlander's offense conduct, including:

      i. Mr. Friedlander's overwhelming childhood history of physical, emotional, and mental trauma, abuse, and neglect;

      ii. Mr. Friedlander's developmental disabilities; and

      iii. The catalysts for Mr. Friedlander's offense: heavy intoxication, peer pressure, and the mistaken belief that his victims, Clarence and Gloria White, had caused harm to his sole-surviving natural sister; and

   b. The reasons Judge Quackenbush gave for sentencing Mr. Friedlander as an adult—primarily that the maximum possible juvenile sentence (less than 48 months) would not suffice.

   c. Judge Quackenbush's expectation, at the time of sentencing, that Mr. Friedlander would receive parole in the future.

   d. Judge Quackenbush's belief, voiced at the time of sentencing, that it was inappropriate to lock Mr. Friedlander up forever without the chance of release upon rehabilitation.

   e. The misinformation that tainted Mr. Friedlander's sentencing proceedings, including:

      i. the rushed and scientifically unsound opinions given by medical and psychological experts; and

      ii. the superficial investigation into Mr. Friedlander's significant history of abuse, trauma, and neglect.

   f. The newly discovered evidence that Clarence White, the victim of Mr. Friedlander's original offense, forgave Mr. Friedlander and hoped he would be paroled.

   g. Dr. Kele Kirschenbaum's professional and scientific conclusions that:

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

      i.   Mr. Friedlander poses a low risk of recidivism;

      ii.   Mr. Friedlander shows genuine remorse and self-reflection;

      iii.   Mr. Friedlander is genuinely committed to sobriety and to living a law-abiding life; and

      iv.   the medical and psychological experts at Mr. Friedlander's original sentencing wrongfully portrayed Mr. Friedlander's character and rehabilitative potential to the sentencing court.

h.   The improved understanding in modern psychology (and criminal law) of how juvenile offenders differ tremendously from adult offenders. Namely, juvenile offenders are—

      i.   more affected by childhood trauma through delayed development of maturity;

      ii.   more susceptible to negative influences and outside peer pressures;

      iii.   more salvageable—i.e., more likely to successfully rehabilitate; and

      iv.   less culpable for their own actions because, as juveniles, their offenses tend to reflect their environment and heavy dependence on adults—not their own, autonomous choices.

i.   Facts explaining and mitigating the weight of Mr. Friedlander's institutional infractions through 2014, including his overwhelming despair, loneliness, unaddressed psychological trauma, and his consequent abuse of substances to deal with these issues.

j.   Evidence showing that Mr. Friedlander is, more likely than not, actually innocent of the alleged 2020 DHO infraction (which is the only specific infraction cited in the 2022 Notice of Action).

k.   Evidence showing a positive institutional adjustment, which was contained in Mr. Friedlander's submissions and which the Lompoc USP staff members would have addressed and corroborated had they been given an opportunity to speak, including:

      i.   many hours of rehabilitative programming;

      ii.   positive reviews from job supervisors;

      iii.   That there are many inmates that give the BOP staff grief, but Mr. Friedlander isn't one of them; and

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

        iv.  Mr. Friedlander's self-referrals to solitary confinement when he feels unsafe around other inmates.

    l.  Evidence showing Mr. Friedlander has dramatically changed in the past eight years, including:

        i.  his absolute commitment to sobriety and nonviolence and to helping other inmates find similar paths; and

        ii.  the sacrifices he has made in recent years to maintain these commitments, including long periods in solitary confinement and severe and permanent injuries from his refusal to defend himself against other inmates.

    m.  The overwhelming disparity between:

        i.  the sentence Mr. Friedlander had served to date (423 months as of June 8, 2022) and the sentence his co-conspirator received (84 months);

        ii.  the sentence Mr. Friedlander had served to date (423 months) and the maximum possible sentence he would have received had his offense occurred just nine months later (151 months); and

        iii.  The sentence Mr. Friedlander had served to date (423 months) and the U.S. Parole Commission's most recent aggregate guidelines sentence calculations (222 months, last calculated in 2012).

    n.  The robust and comprehensive release plan that awaits Mr. Friedlander at the Adult & Teen Challenge Program, which includes housing, continued substance abuse and mental health treatment, spiritual practice, job training, and a safe and supportive community.

3.  The above listed facts show that Mr. Friedlander must be granted mandatory parole—i.e., that his institutional infractions are not serious or frequent and that he does not pose a reasonable probability of committing another crime if released.

**The Commission violated 28 C.F.R. § 2.19(c).**

*Facts:*

1.  28 C.F.R. § 2.19(c) provides that "if the prisoner disputes the accuracy" of information presented to the Commission, "the Commission ***shall*** resolve such dispute by" a preponderance of evidence (emphasis added).

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

2. As part of this requirement, 28 C.F.R. § 2.19 n.4(c) states that the Commission "***must***" weigh "information submitted to [it] which conflicts with the presentence report, ***or any other government report***" (emphasis added).

3. Mr. Friedlander disputed the accuracy of the BOP's summary report on his institutional infraction history, particularly with regard to his alleged 2020 institutional infraction.

4. Mr. Friedlander timely provided an explanation and supporting evidence in his prehearing submissions to the Commission that set forth the basis for his factual disputes. However, the Hearing Examiner did not review or consider those submissions for the June 8, 2022, hearing.

*Reasons:*

1. Hearing Examiner Whitmer did not directly address his weighing of the evidence or his ultimate findings. It is unclear whether Hearing Examiner Whitmer purported to resolve the factual dispute as required by 28 C.F.R. § 2.19(c).

2. Nevertheless, Hearing Examiner Whitmer could not have competently resolved this factual dispute by preponderance of the evidence without reviewing and considering the evidence Mr. Friedlander presented in support of his assertions, including the following information:

   a. of Mr. Friedlander's BOP infractions, his 2020 infraction was the first infraction he's ever disputed the accuracy of;

   b. he asked BOP staff to test the drug strip found on his belongings for fingerprints, but the item was destroyed;

   c. BOP staff tested Mr. Friedlander to see if he tested positive for controlled substances (he didn't);

   d. this drug strip found in his belongings occurred two months before his 2020 statutory interim hearing (a bizarre time to engage in risky behavior); and

   e. BOP staff observed that Mr. Friedlander no longer spends time with problematic inmates.

**The Commission violated 28 C.F.R. § 2.36.**

*Facts:*

1. 28 C.F.R. § 2.36 instructs the Commission on how to handle institutional infractions and new criminal conduct in the context of parole determinations.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

2. 28 C.F.R. § 2.36 n.1 provides that "Multiple instances of drug abuse are considered as separate violations ***only*** when separated by an intervening disciplinary report" (emphasis added). In this provision, "drug abuse" includes both alcohol and non-alcohol substances.[1]

3. Under 18 U.S.C. § 4206(d), the presumption in favor of mandatory parole may only be rebutted by finding the prisoner has "seriously or frequently ***violated*** institutional rules and regulations" or poses a reasonable probability of committing another crime. The statute focuses on violations, not infractions.

***Reasons:***

1. The Commission asserted Mr. Friedlander has accrued "20 DHO level infractions," which are listed and summarized in the 2018 and 2020 Parole Hearing Summary reports. *See* Parole Hearing Memorandum, Exhibit K at 5–7, Exhibit L at 6.

   a. The nine infractions between December 10, 2006, and February 13, 2020, all involved "drug abuse" and were not separated by intervening disciplinary reports. As such, the Commission should have considered these nine incidents as a single "drug abuse" violation.

   b. The six infractions between January 30, 1998, and July 4, 2000, all involved "drug abuse" and were not separated by intervening disciplinary reports. As such, the Commission should have considered these six incidents as a single "drug abuse" violation.

   c. The two infractions between March 11, 1997, and August 18, 1997, both involved "drug abuse" and were not separated by intervening disciplinary reports. As such, the Commission should have considered these two incidents as a single "drug abuse" violation.

2. The Commission failed to recognize that Mr. Friedlander's institutional infractions amount to a total of six violations; instead, it apparently treated them as 20 separate violations in its 18 U.S.C. § 4206(d) analysis.

---

[1] An earlier clause clearly distinguishes between alcohol and non-alcohol substances by specifically referring to "drugs (other than alcohol)." That distinction was not made in the "Multiple instances" clause.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

**The Commission violated 18 U.S.C. §§ 4206(a), (c) and 28 C.F.R. § 2.20.**

*Facts:*

1. 18 U.S.C. § 4206(a) provides that the Commission ***shall*** make parole determinations "subject to the provisions of" §§ 4206(b) and (c) and "pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1)."

2. 18 U.S.C. § 4206(c) provides that the Commission "may grant or deny release on parole notwithstanding the guidelines . . . if it determines there is good cause for so doing: *[p]rovided*, [t]hat the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon."

3. 28 C.F.R. § 2.20 sets forth the aforementioned guidelines.

   a. 28 C.F.R. § 2.20 n.2 states that "***[i]n each case***, the examiner shall review the guidelines and, prior to making a recommendation, shall consider whether there is 'good cause' for a decision outside the guidelines, or whether a decision within the guidelines is appropriate" (emphasis added).

   b. 28 C.F.R. § 2.20 n.7 states that the Commission's guidelines are to be interpreted under the parsimony principle. In other words, absent unusually aggravating circumstances, the Commission should apply the lower end of the guidelines range.

4. 18 U.S.C. § 4206 and 28 C.F.R. § 2.20 apply generally to "parole determination[s]" and "parole release consideration[s]." The Commission's statutory and regulatory duty to calculate the guidelines and justify decisions outside the guidelines applies to all parole determinations and parole release considerations, including statutory interim hearings.

5. The Commission reports that it last calculated Mr. Friedlander's guidelines for the January 31, 2012, parole hearing.

   a. At that time, the Commission stated Mr. Friedlander's guideline range was "222+ months." Mr. Friedlander had already served 299.5 months.

   b. This 222-month guideline is the aggregate guideline range for Mr. Friedlander's original offense and "rescission guidelines" for all institutional infractions committed before 2012 (i.e., all but his 2014 and 2020 infractions).

   c. The Commission does not report having re-calculated Mr. Friedlander's guideline range at the 2014, 2016, 2018, 2020, or 2022 hearings.

6. Mr. McEntire obtained a copy of Mr. Friedlander's parole file through a FOIA request to the Commission. None of the materials produced pursuant to that request mentioned

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

how that 222-month guidelines range was calculated nor the reasons justifying the above-guidelines departures in 2012, 2014, 2016, 2018, 2020, or 2022.

*Reasons:*

1.  On five separate occasions since 2014, the Commission has failed to calculate Mr. Friedlander's guidelines range as required.

2.  On six separate occasions since 2012, the Commission apparently decided that a decision within the guidelines was not appropriate. However, the Commission has not furnished Mr. Friedlander with the written notice of reasons required by 18 U.S.C. § 4206(c).

3.  Even if Mr. Friedlander's guidelines range were increased to reflect his 2014 and 2020 infractions as separate and new *violations*, that increase would be a minimum of zero months and a maximum of ten months pursuant to 28 C.F.R. § 2.36. The maximum possible aggregate guidelines range would be 232 months.

    a.  Again, Mr. Friedlander had already served 299.5 months as of his 2012 parole hearing.

4.  Mr. Friedlander has vastly overserved his guidelines range, but the Commission has repeatedly failed to justify its ever-increasing departure from its own guidelines range.

5.  Had the Commission followed its procedural obligations, Mr. Friedlander's guidelines would have indicated that parole was appropriate in 2012, 2014, 2016, 2018, 2020, and 2022.

6.  The Commission's failures to provide adequate written notice pursuant to 18 U.S.C. § 4206(c) in 2012, 2014, 2016, 2020, and 2022, should be construed as implicit concessions that the Commission has no valid reason why a decision within the guidelines was not appropriate for Mr. Friedlander.

7.  Ultimately, the Commission's significant departures from its own guidelines calculation are illegal for lack of "good cause" and failure to give the required written notice of reasons.

**The Commission violated 18 U.S.C. § 4206(b).**

*Facts:*

1.  18 U.S.C. § 4206(b) states that "[t]he Commission *shall* furnish the eligible prisoner with a written notice of its determination not later than twenty-one days, excluding holidays, after the date of the parole determination proceeding. If parole is denied such notice shall state with particularity the reasons for such denial."

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

2. At the June 8, 2022, hearing, Hearing Examiner Whitmer confirmed Mr. McEntire would receive a written copy of the written notice of the Commission's determination.

3. The Commission completed the Notice of Action on June 29, 2022, but it did not furnish this Notice of Action to Mr. Friedlander or Mr. McEntire within the required 21-day period.

   a. In fact, neither Mr. Friedlander nor Mr. McEntire was aware that any Notice of Action had been completed until Mr. McEntire contacted the Commission to request the current status of the Notice of Action on July 21, 2022. At that time, the Commission notified Mr. McEntire that it had completed the Notice of Action three weeks earlier.

4. Appeal to the National Appeals Board must be made within 30 days of the date of the Commission's Notice of Action—i.e., by July 29, 2022.

   a. At the time Mr. McEntire and Mr. Friedlander finally obtained the Commission's Notice of Action, only eight days remained of the statutorily imposed 30-day period for appeal.

5. The Commission also violated 18 U.S.C. § 4206(b) following Mr. Friedlander's 2016 Mandatory Parole Hearing. The hearing occurred on June 7, 2016. The Notice of Action was not issued until August 23, 2016.

*Reasons:*

1. The Commission's violation of 18 U.S.C. § 4207(b) (failure to furnish its Notice of Action to Mr. Friedlander or Mr. McEntire within 21 days of the parole determination proceeding) has prejudiced Mr. Friedlander's appeal by eliminating all but eight days of the 30-day period in which Mr. Friedlander must prepare and file his appeal.


**The Commission violated 18 U.S.C. § 4208(h) and 28 C.F.R. § 2.14.**

*Facts:*

1. 18 U.S.C. § 4208(h) requires that "subsequent parole determination proceedings ***shall*** be held not less frequently than . . . twenty-four months in the case of a prisoner with a term . . . of seven years or longer" (emphasis added).

2. 28 C.F.R. § 2.14 n.1 states that "when the examiner(s) does not visit the institution during the specified month," then the parole determination proceeding will be scheduled for the "preceding month" before the actual 24th month—i.e., 23 months after the last hearing.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

3. Mr. Friedlander's last parole hearing occurred on May 20, 2020.

4. Mr. Friedlander's 2022 parole hearing was not scheduled until June 8, 2022.

5. The Commission has also violated 18 U.S.C. § 4208(h) and 28 C.F.R. § 2.14 before—by waiting more than 24 months between Mr. Friedlander's May 6, 2008, and June 23, 2010, statutory interim hearings.

*Reasons:*

1. The Commission's violation of 18 U.S.C. § 4208(h) and 28 C.F.R. § 2.14 prevented Mr. Friedlander from receiving timely parole determinations, as guaranteed by statute.

---

*Ground Three*: (d) The Commission applied a statute or regulation incorrectly.

---

**The Commission misapplied 18 U.S.C. §§ 4206, 4208 and 28 C.F.R. §§ 2.14, 2.18, 2.36.**

*Facts:*

1. 18 U.S.C. § 4206(d) indicates that the Commission shall not release a prisoner after the two-thirds date "if it determines the prisoner has seriously or frequently ***violated*** institution rules and regulations or that there is a reasonable probability the prisoner will commit any Federal, state, or local crime" (emphasis added).

   a. 28 C.F.R. § 2.36 n.1 also clarifies the meaning of §4206(d)'s focus on violations rather than infractions—while a prisoner may incur multiple infractions for drug abuse, these "are considered as separate violations ***only*** when separated by an intervening disciplinary report" (emphasis added).

2. 18 U.S.C. § 4206(d) does not define "seriously."

   a. However, 28 C.F.R. § 2.36(a) distinguishes between "disciplinary infractions" a.k.a. "administrative rule infractions," which have low rescission guideline penalties of zero to eight months, and "new criminal conduct," which has higher rescission guideline penalties. This distinction reflects the Commission's policy of grading disciplinary infractions and administrative rule infractions at a lower severity rating than new criminal conduct.

   b. Further, 28 C.F.R. § 2.36 n.2(d) also provides examples of conduct that should be considered an administrative rule infraction rather than new criminal behavior. Specifically, it states that assaults that are "rather minor" or involve situations where it is not "possible to establish which offender is the aggressor" should be considered administrative infractions, not new criminal behavior.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

    c.   Read together, these sections indicate that a prisoner does not "seriously" violate institutional rules and regulations by conduct that is treated as a mere administrative rule infraction.

3.   18 U.S.C. § 4206(d) does not define "frequently."

    a.   18 U.S.C. § 4206(d) requires the Commission to find that the prisoner has "frequently violated institutional rules and regulations" in order to deny mandatory parole at that parole determination proceeding.

    b.   Under 18 U.S.C. § 4208(h) and 28 C.F.R. § 2.14(a), statutory interim hearings are "parole determination proceedings" for the specific purpose of considering any significant developments or changes in the prisoner's status since the last parole determination proceeding.

    c.   Read together, these standards indicate that the Commission should focus particular attention on any developments or status changes since the last parole determination proceeding in determining whether a prisoner has "frequently violated institution rules and regulations."

4.   18 U.S.C. § 4206 and 28 C.F.R. § 2.18 state that the Commission may release a prisoner at any parole determination as long as it determines "the prisoner has ***substantially*** observed the rules of the institution . . . and upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, . . . determine[s] that . . . there is a ***reasonable probability*** that, if released, the prisoner would live and remain at liberty without violating the law or the conditions of his parole" (emphasis added).

5.   Congress would not have required the Commission to hold statutory interim hearings every 24 months (18 U.S.C. § 4208(h); 28 C.F.R. § 2.14) or calculate rescission guidelines for new institutional infractions or new criminal conduct (28 C.F.R. § 2.36) if a dated institutional infraction history automatically foreclosed future release.

6.   Read together, the standards of 18 U.S.C. §§ 4206, 4208 and 28 C.F.R. §§ 2.14, 2.18, 2.36 indicate that:

    a.   a prisoner need not have a perfect institutional disciplinary record to be paroled; and

    b.   a past finding that a prisoner has seriously or frequently violated institution rules and regulations does not preclude the Commission from granting parole at a future date, particularly when there are developments or status changes since the last hearing showing substantial compliance with institutional rules.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

7. The Commission denied Mr. Friedlander parole under 18 U.S.C. § 4206(d) specifically because it found Mr. Friedlander "frequently and seriously violated" institutional rules through his institutional infractions, which "creates a reasonable probability [Mr. Friedlander] will commit any Federal, State, or local crime if released at this time."

   a. The Commission cited no other basis for finding a reasonable probability that Mr. Friedlander would commit another crime if released. Accordingly, its decision to deny parole rested squarely on its claimed finding of serious and frequent rule violations.

8. Mr. Friedlander pleaded not guilty to the alleged 2020 infraction. He was subsequently drug tested as part of the investigation, yielding negative results for any and all substances.

9. Mr. Friedlander's last institutional infraction was from 2014. All his other institutional infractions occurred between 1997 and 2009. All were adjudicated as institutional infractions, not as new criminal charges.

10. Mr. Friedlander's institutional infractions for fighting are administrative rule infractions, not new criminal behavior, under 28 C.F.R. § 2.36 n.2(d). *See* Parole Hearing Memorandum, Exhibit K at 6-7.

***Reasons:***

1. The Commission denied Mr. Friedlander parole in 2016, 2018, 2020, and 2022 on the basis that Mr. Friedlander has "frequently and seriously violated the rules of the institution," and this behavior indicates "that there is a high probability that [Mr. Friedlander] will not follow the laws upon release from prison."

   a. Mr. Friedlander has not seriously violated institutional rules.

      ▪ Mr. Friedlander has only incurred institutional infractions during his time in BOP custody, which are graded as lowest severity under the Commission's rescission guidelines.

   b. Mr. Friedlander has not frequently violated institutional rules.

      ▪ Mr. Friedlander has incurred no new institutional infractions since his 2020 hearing.

      ▪ Mr. Friedlander has incurred only one (disputed) institutional infraction in the past eight years. This infraction did not constitute a new violation under 28 C.F.R. § 2.36 n.1.

      ▪ In fact, under 28 C.F.R. § 2.36 n.1, Mr. Friedlander's last new violation occurred in 2006. *See* Parole Hearing Memorandum, Exhibit K at 6.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

    c.  Besides, it would be unconstitutional double counting for the Commission to penalize past institutional infractions through both (1) added time to the presumptive parole date through 28 C.F.R. § 2.36's rescission guidelines and (2) summary denial of parole for the rest of Mr. Friedlander's life sentence.

        ▪  The Commission has already penalized Mr. Friedlander for all institutional infractions through 2012 by adding rescission guidelines, for an aggregate guidelines sentence of 222 months.

    d.  The Commission raised no other basis to find a reasonable probability that Mr. Friedlander would commit another crime if released.

        ▪  In fact, Mr. Friedlander provided the Commission with a psychological assessment conducted in early-2021 indicating the opposite: there was not a reasonable probability Mr. Friedlander would commit another crime if released.

2.  Had the Commission correctly interpreted and applied the statutes and regulations noted above, it would have concluded that the 18 U.S.C. § 4206(d) presumption of parole was not, in fact, rebutted by serious or frequent rule violations nor by a reasonable probability of recidivism, and that Mr. Friedlander was entitled to parole.

---

**Ground Four**: (a) The Commission relied on erroneous information, and the actual facts justify a different decision.

---

*Facts:*

1)  28 C.F.R. § 2.19(c) provides that "if the prisoner disputes the accuracy" of information presented to the Commission, "the Commission ***shall*** resolve such dispute" by a preponderance of evidence (emphasis added).

2)  As part of this requirement, 28 C.F.R. § 2.19 n.4(c) states that the Commission "***must***" weigh "information submitted to [it] which conflicts with the presentence report, ***or any other government report***" (emphasis added).

3)  Mr. Friedlander disputed the accuracy of the BOP infraction summary, specifically the alleged 2020 institutional infraction.

4)  Mr. Friedlander timely provided an explanation and supporting evidence in his prehearing submissions to the Commission in support of his factual dispute. However, the Hearing Examiner did not review or consider those submissions for the June 8, 2022, hearing.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

5) The Commission made no indication that it reviewed, considered, or relied on any other sources of information besides the BOP infraction summary.

6) In denying parole, the Commission cited a single specific reason—Mr. Friedlander's 2020 infraction—as evidence of Mr. Friedlander's serious and frequent violations of institutional rules.

***Reasons:***

1) The Commission relied solely on the BOP infraction summary without resolving the factual dispute as to the accuracy of that information.

2) The Commission admitted it had not reviewed the information Mr. Friedlander submitted in support of his factual dispute. Instead, it continued to rely on the disputed (and erroneous) BOP infraction summary.

3) The actual facts justify a different decision—that Mr. Friedlander was actually innocent of the 2020 institutional infraction and that the 2020 infraction is not a valid basis for denying Mr. Friedlander mandatory parole.

---

| **Ground Five**: (e) The Commission incorrectly applied the guidelines. |
| --- |

***Facts:***

1) 18 U.S.C. § 4206(a) provides that the Commission ***shall*** make parole determinations "subject to the provisions of" §§ 4206(b) and (c) and "pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1)."

2) 18 U.S.C. § 4206(c) provides that the Commission "may grant or deny release on parole notwithstanding the guidelines . . . if it determines there is good cause for so doing: *[p]rovided*, [t]hat the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon."

3) 28 C.F.R. § 2.20 sets forth the guidelines mentioned in 18 U.S.C. §§ 4206(a) and (c).

   a) 28 C.F.R. § 2.20 n.2 states that "***[i]n each case***, the examiner shall review the guidelines and, prior to making a recommendation, shall consider whether there is 'good cause' for a decision outside the guidelines, or whether a decision within the guidelines is appropriate" (emphasis added).

   b) 28 C.F.R. § 2.20 n.7 states that the Commission's guidelines are to be interpreted under the parsimony principle. In other words, absent unusually aggravating circumstances, the Commission should apply the lower end of the guidelines range.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

4) 18 U.S.C. § 4206 and 28 C.F.R. § 2.20 apply generally to "parole determination[s]" and "parole release consideration[s]." The Commission's statutory and regulatory duty to calculate the guidelines and justify decisions outside the guidelines applies to all parole determinations and parole release considerations, including statutory interim hearings.

5) In 2012, the Commission calculated Mr. Friedlander's aggregate guidelines (including added time for all institutional infractions to date) as 222 months. At that time, Mr. Friedlander had already served 299.5 months.

6) Mr. McEntire obtained a copy of Mr. Friedlander's parole file through a FOIA request to the Commission. None of the materials produced pursuant to that request mentioned how that 222-month guidelines range was calculated, besides general references to lump-sum increases for institutional infractions.

7) The Commission has not calculated the guidelines since 2012. *See* Parole Hearing Memorandum, Exhibit K at 4–5.

***Reasons*:**

1) The Commission does not explain how it reached its aggregate guidelines range of 222 months in 2012.

   a) Nothing in the Commission's records indicates that the Commission considered, let alone applied, the non-numerical youthfulness mitigating factor as required by 28 C.F.R. §2.20(h).

   b) As explained above, the Commission apparently miscalculated the total number of "violations" stemming from Mr. Friedlander's institutional infractions by failing to adhere to 28 C.F.R. § 2.36 n.1. As a result, the Commission likely miscalculated the rescission guidelines increase.

2) Even assuming the Commission correctly calculated the guidelines range in 2012, Mr. Friedlander had already overserved his guidelines range by 77.5 months at that point. The Commission misapplied the guidelines range by ignoring that guidelines range at Mr. Friedlander's §4206(a) hearings in 2012 and 2014, as well as his §4206(d) hearings in 2016, 2018, 2020, and 2022.

3) The Commission misapplied the guidelines by failing to calculate Mr. Friedlander's guidelines range at his 2014, 2016, 2018, 2020, and 2022 hearings, as required by 18 U.S.C. § 4206 and 28 C.F.R. § 2.20.

***Ground Six*:** (f) A decision outside the guidelines was not supported by the reasons or facts stated in the Notice of Action.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

***Facts*:**

1) 18 U.S.C. § 4206(a) provides that the Commission ***shall*** make parole determinations
   "subject to the provisions of" §§ 4206(b) and (c) and "pursuant to guidelines promulgated
   by the Commission pursuant to section 4203(a)(1)."

2) 18 U.S.C. § 4206(c) provides that the Commission "may grant or deny release on parole
   notwithstanding the guidelines . . . if it determines there is good cause for so doing: *[p]rovided*,
   [t]hat the prisoner is furnished written notice stating with particularity the reasons for its
   determination, including a summary of the information relied upon."

3) 28 C.F.R. § 2.20 sets forth the guidelines mentioned in 18 U.S.C. §§ 4206(a), (c).

   a) 28 C.F.R. § 2.20 n.2 states that "[i]n each case, the examiner shall review the guidelines
      and, prior to making a recommendation, shall consider whether there is 'good cause' for a
      decision outside the guidelines, or whether a decision within the guidelines is
      appropriate."

   b) 28 C.F.R. § 2.20 n.7 states that the Commission's guidelines are to be interpreted under
      the parsimony principle. In other words, absent unusually aggravating circumstances, the
      Commission should apply the lower end of the guidelines range.

4) In 2012, the Commission calculated Mr. Friedlander's aggregate guidelines (including added
   time for all institutional infractions to date) as 222 months. At that time, Mr. Friedlander had
   already served 299.5 months.

5) The Commission has not calculated the guidelines since 2012. Specifically, the Commission
   did not calculate the guidelines at Mr. Friedlander's 2014, 2016, 2018, 2020, or 2022 parole
   hearings. *See* Parole Hearing Memorandum, Exhibit K at 4–5.

6) Had the Commission calculated the guidelines to account for Mr. Friedlander's 2014 and
   2020 infractions, the new infractions would not have been considered new violations, as they
   were further instances of drug abuse that were not separated by an intervening disciplinary
   report. 28 C.F.R. § 2.36 n.1. The new infractions would therefore not have increased Mr.
   Friedlander's aggregate guidelines range of 222 months.

   a) Even if these two infractions were considered new violations, they would have amounted
      to a guidelines increase between zero and 10 months. 28 C.F.R. § 2.36.

7) Mr. McEntire obtained a copy of Mr. Friedlander's parole file through a FOIA request to the
   Commission. None of the materials produced pursuant to that request mentioned the
   reasoning for the Commission's above-guidelines departures in 2012, 2014, 2016, 2018,
   2020, or 2022.

John Friedlander, RN 05167-085, Lompoc USP
Addendum to Appeal from June 29, 2022, Notice of Action

***Reasons*:**

1) The Commission has failed to provide any reasons or facts in support of its repeated above-guidelines decisions in 2012, 2014, 2016, 2018, 2020, and 2022, despite its statutory and regulatory duty to calculate the guidelines and justify its departures from those guidelines at parole determination proceedings.



John B. McEntire, IV
*Senior Litigator*
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for John F. Friedlander

Before the United States Parole Commission

| | |
|---|---|
| United States,<br><br>        Plaintiff,<br><br>  v.<br><br>John Franklin Friedlander #05167-085,<br><br>        Defendant. | Declaration of John B. McEntire, IV |

I, John B. McEntire, IV, state the following:

1.      I am over 18 and competent to testify.

2.      I represent John F. Friedlander, #05167-085.

3.      On February 24, 2022, Mr. Friedlander completed and signed Parole Form I-24, which designated me as his representative for the June 2022 parole hearing. A true and correct copy of that I-24 is appended to this Declaration as Attachment A.

4.      On March 22, 2022, Garth Ambersley, a hearing coordination specialist for the U.S. Parole Commission, sent an e-mail asking me to submit all materials for Mr. Friedlander's upcoming parole hearing no later than early in the week of March 28, 2022. A true and correct copy of that e-mail is appended to this Declaration at Attachment B.

5.      On March 28, 2022, I submitted Mr. Friedlander's hearing materials to Garth Ambersley via e-mail, as requested. I also sent the materials to the following e-mail: Case.Issue@usdoj.gov. These materials included a 31-page document titled "Memorandum Supporting Application for Mandatory Parole," as well as 18 supporting exhibits. A true and correct copy of that e-mail is appended to this Declaration at Attachment C.

6.      On June 8, 2022, I arrived at USP Lompoc for Mr. Friedlander's parole hearing. While passing through security, I introduced myself to Chris Whitmer, the hearing examiner, who was also passing through security at the same time.

7.      Together, we walked into USP Lompoc and proceeded to an empty lunch room, which is where the hearing was held.

8.      As we waited in the lunch room for BOP staff to bring out Mr. Friedlander, I asked Examiner Whitmer whether he had an opportunity to review the hearing materials I submitted to Garth Ambersley.

Declaration
– 1 –

9.  Examiner Whitmer said he had not read the materials, and asked when I had submitted them.

10.  I told Examiner Whitmer that I provided the materials back in late-March, as requested by the Parole Commission.

11.  I also told Examiner Whitmer that I brought an extra copy of the materials, and asked him if he'd like to review them. He asked if I planned on covering what was in the materials during the hearing.

12.  I advised Examiner Whitmer I planned on covering *some* of the materials during the hearing, but couldn't cover everything, as there were a lot of documents and reports. In response, Examiner Whitmer declined to receive or a review a complete copy of the materials I previously submitted to the Parole Commission.

13.  Case Manager B. Hildenbrand, as well as Counselor Jorge Garcia, were present for the hearing, but weren't given an opportunity to speak on Mr. Friedlander's progress in BOP custody. If Counselor Garcia was asked, he'd say that he doesn't have any issues with Mr. Friedlander, and noted he stays away from the troublemakers at USP Lompoc.

14.  After the hearing concluded, I asked Examiner Whitmer how I'd be advised of the Parole Commission's official decision. He indicated a copy of the Notice would be sent to both me and Mr. Friedlander.

15.  On July 21, 2022, I still had not received a copy of the Parole Commission's official decision.

16.  Concerned about the silence, I contacted Mr. Friedlander via CorrLinks to see if he had received a copy. He had not. Mr. Friedlander advised me that, on or about July 8, he asked Case Manager B. Hildenbrand about whether BOP had received a final decision from the Parole Commission. He had not. Additionally, Mr. Friedlander asked Case Manager B. Hildenbrand every week since about whether a final decision from the Parole Commission was received. Each time,

Declaration

– 2 –

Case Manager B. Hildenbrand said he had not received a copy of the Notice. A true and correct copy of Mr. Friedlander's e-mail to me with this information is appended as Attachment D.

17. On July 21, 2022, I contacted Garth Ambersley at the Parole Commission to inquire about the Notice. He responded that same day and attached the Notice, which was issued on June 29, 2022.

18. Because there is a 30-day window to pursue an appeal, Mr. Friedlander's 30-day window to draft an appeal was reduced to 8 days, which complicated my ability to assemble materials.

19. Among the issues: I couldn't obtain Mr. Friedlander's original ("wet") signature on the Parole Form I-22 (Appeal). There simply wasn't enough time to mail this form to FCC Lompoc and receive back a signed copy in what remained of our 30-day appeal window due to the lack of notice.

20. As an alternative, I contacted Mr. Friedlander to obtain his permission to e-sign the Parole Form I-22 on his behalf. In a July 22, 2022 e-mail, Mr. Friedlander authorized me to e-sign the document. A true and correct copy of Mr. Friedlander's e-mail to me with his authorization is appended as Attachment E.

21. With Mr. Friedlander's permission, I e-signed the Parole Form I-22 on his behalf.

I swear under penalty of perjury that the foregoing is true and correct to the best of my memory and recollection.

Dated: July 26, 2022.

John B. McEntire, IV, WSBA No. 39469
Federal Defenders of Eastern Washington & Idaho
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
jay_mcentire@fd.org

Declaration
– 4 –

**U.S. Department of Justice**
**United States Parole Commission**

**Notice of Hearing-Parole Application**
**Representative and Disclosure Request**

Name: _John Friedlander_        Date: _2-24-22_

Register No. _85167-085_        Institution: _U.S.P. Lompoc_

**Instructions:**  This form is to be furnished to and completed by every inmate prior to every scheduled hearing before the Parole Commission.  It must be furnished at least 60 days in advance of the scheduled hearings unless such 60-day notice is waived by the inmate (see No. 1 below).

1.  **Notice of Hearing:**  Provided you have applied for parole in the space below, you will be given a hearing by officials of the U.S. Parole Commission on the docket of parole hearings scheduled for _the week of June 6, 2022_ to _____, 20____.

**If there are less than 60 days between the date of this notice and your hearing, your hearing will be postponed until the next docket of parole hearings at your institution *unless* you initial the following waiver:**

_____ I received this form less than 60 days from the date of my hearing.  However, I hereby waive my right to 60 *(Initials)* days advance notice of the hearing time and notice of my disclosure rights, and I request to be heard as scheduled.

2.  **Application:**  I hereby apply for parole, or have previously applied and still wish to be paroled:

_John Friedlander_                    _2-24-22_
        Signature                              Date

3.  **Waiver of Parole/Parole Hearing:**

_____ A.  I wish to waive parole consideration at this time.
*(Initials)*

_____ B.  I wish to waive my scheduled Statutory Interim Hearing and have not incurred any Institutional Disciplinary
*(Initials)*     Committee infractions since my last hearing.

_____ C.  I wish to waive the parole effective date or presumptive parole date previously determined by the
*(Initials)*     Commission. (**Note:**  A previously waived parole date will be reinstated upon reapplication, provided no new adverse information exists in your case.)

_____ D.  I wish to waive mandatory parole.
*(Initials)*

**Note:**  1.  If you waive parole or a parole hearing, any subsequent application or reapplication must be submitted at least 60 days prior to the first day of the month in which hearings are conducted at the institution where you are then confined.

2.  Revocation hearings cannot be waived.  Hearings under 28 C.F.R. 2.28 (b-f) and rescission hearings can only be waived by waiver of the parole effective date or presumptive parole date previously determined by the Commission.

Parole Form I-24
July 2004

Attachment A - 1

4. **Representative:** At your hearing you may have a representative of your choice (*e.g., family member, friend, staff member, or attorney*), who will be permitted to make a statement on your behalf at the close of the hearing. The name of your representative willing and able to appear should be written in below. Arrangements for the appearance of a representative must be made through your case manager.

Name of Representative: *John B. McEntire IV, Jaime Dienst Brown*

**If you do not wish a representative, initial the following waiver:**

_____ I do not wish a representative at my hearing.
*(Initials)*

5. **Disclosure of File Information:** You may review the reports and documents in your file which will be considered by the Commission, if you submit a request for disclosure on this form at least 30 days in advance of your hearing. (**Note:** Certain material which the Commission will consider may be exempt by law from disclosure. In such event, a summary of the material withheld from you will be furnished if you request to review your file.)

*JH* I wish to inspect the disclosable material in my institutional file.
*(Initials)*

*JH* I wish to inspect any documents concerning me which the Parole Commission may have. I understand that in
*(Initials)* most cases, the Commission will have no material, until after an initial hearing has been held. (If you request disclosure of Commission documents, you must do so on this form at least 30 days in advance of the hearing.)

**Note:** At review hearings, the Commission will consider only information about factors which have changed, or which may have changed, since your last parole hearing.

**If you do not wish to request any disclosure, initial the following waiver:**

_____ I do not wish to inspect my files before the hearing scheduled on this form.
*(Initials)*

**If you have inspected file material, initial below:**

_____ I have reviewed the materials in my institutional file on _____, 20\_\_\_\_\_
*(Initials)*

_____ I have reviewed the Parole Commission file material on _____, 20\_\_\_\_\_
*(Initials)*

**If you have not yet received disclosure of the file materials you requested or if there are less than 30 days between either of the above dates and your hearing, your hearing will be postponed until the next docket of parole hearings at your institution unless you initial the following waiver:**

_____ I did not receive 30 days prehearing disclosure of the material I requested from my files. However, I hereby
*(Initials)* waive my right to disclosure 30 days in advance of the hearing, and I request to be heard as scheduled.

Parole Form I-24
July 2004

Attachment A - 2

**From:** Ambersley, Garth (USPC) <Garth.Ambersley@usdoj.gov>
**Sent:** Tuesday, March 22, 2022 9:05 AM
**To:** Jay McEntire <Jay_McEntire@fd.org>; Case Issue (USPC) <Case.Issue@usdoj.gov>; BOP Docket (USPC) <BOP.Docket@usdoj.gov>
**Subject:** RE: SIH Parole Hearing - RN 05167-085

Good morning Jay,

# Garth D. Ambersley

**Hearing Coordination Specialist**
**United States Department of Justice**
United States Parole Commission (USPC)
90 K St, NE. 3rd Floor
Washington, DC 20530
O: 202-346-7075
E-mail: Garth.Ambersley@usdoj.gov

"Perfection is not attainable, but if we chase perfection we can catch excellence."

Good morning Jay,

I'm the Hearing Coordination Specialist for all **in-person** BOP dockets, I received your client's I-24, please send me all relevant documents for your client by early next week so I can prepare his pre-hearing package for the Hearing Examiner, if you have any questions please don't hesistate to reach out to me via phone or email.

Thanks,

Garth

Attachment B - 1



Good Morning Garth:

We were able to assemble Mr. Friedlander's parole materials a few days earlier than promised. Attached are the following:

1)  the memorandum supporting mandatory parole; and
2)  the 18 exhibits supporting the memo (labeled Exhibits A thru R).

Please let me know if you have any questions. Also, I'll circle back with you in a week or two on the following:

1)  confirming Jaime Dienst (a legal intern in our office) can attend the parole hearing with me; and
2)  firming up the date and time for Mr. Friedlander's hearing (with the hope it can be in the first part of the week of June 6, as I have to travel to Oklahoma mid-week for in-person hearings in Muskogee for an upcoming murder trial).

Thanks for your help, and hope all is well,

Jay

John B. McEntire, IV | Federal Defenders of Eastern Washington and Idaho
*Senior Litigator*
10 N. Post Street, Suite 700
Spokane, WA 99201
509.624.7606

Attachment C - 1

## John McEntire

**From:**       FRIEDLANDER JOHN FRANKLIN (05167085)

**Sent Date:**  Friday, July 22, 2022 1:21 PM

**To:**         jay_mcentire@fd.org

**Subject:**    RE: RE: COUNSELOR :

COUNSELOR , I HAD ASKED MY CASEMANAGER B. HILDENBRAND TWO WEEKS AGO FOR THE NOTICE
OF ACTION FROM THE PAROLE BOARD , AND HIS REPLY WAS THAT HE HADN'T RECEIVED IT AS OF
THAT DAY AND HE KNOWS THAT EVERY WEEK AFTER THE WEK OF THE 29TH I HAVE BEEN ASKING HIM
FOR THE NOTICE OF ACTION ,COUNSELOR . AND TO ANSWER YOUR QUESTION ,YES , WHAT MY
GIRLFRIEND PATRICIA HAD SAID IS TRUE . THANKYOU FOR EVERYTHING THAT YOU ARE DOING FOR
ME ,COUNSELOR . WITH RESPECT , YOUR CLIENT ,JOHN FRIEDLANDER #05167-085 DOB. 9-1-70

Attachment D - 1

# John McEntire

**From:**       FRIEDLANDER JOHN FRANKLIN (05167085)

**Sent Date:**  Friday, July 22, 2022 10:21 AM

**To:**         jay_mcentire@fd.org

**Subject:**    COUNSELOR:

COUNSELOR , I GIVE YOU MY AUTHORIZATION FOR YOU TO SIGN THE NOTICE OF APPEAL ON MY
BEHALF AND TO STILL BE MY REPRESENTATIVE ON THE PAROLE BOARD'S DECISION THAT WAS MADE
ON JUNE 29TH 2022 , WHICH YOU WERE JUST INFORMED BY THE PAROLE BOARD ON JULY 21ST 2022 .
RESPECTFULLY ,YOUR CLIENT ,JOHN F. FRIEDLANDER #05167-1085 DOB.9-01-70

Attachment E - 1