# Exhibit 20

```
                                      FILED IN THE
                                    U.S. DISTRICT COURT
                                 Eastern District of Washington

                                      NOV 10 1987

                                   JAMES R. LARSEN, Clerk
                                 _____ Deputy
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA, )
) Mag. #87-0096A-01 JLQ
        Plaintiff, )
) November 10, 1987
vs. ) Spokane, Washington
)
JOHN FRANKLIN FRIEDLANDER, )
aka JOHN FRANKLIN WHITE, ) FINDINGS OF FACT AND
) CONCLUSIONS OF LAW
        Defendant. )
)

    The attached verbatim transcript of proceedings, as amended, shall constitute the Findings of Fact and Conclusions of Law.

    DATED this 10th day of November, 1987.

                    /s/ Justin L. Quackenbush
                    JUSTIN L. QUACKENBUSH
                    United States District Judge

Exhibit 20 - Page 1

35

Reproduced at the National Archives at Seattle

```
 1                                      NOVEMBER 10, 1987
 2                                      10:30 o'clock, AM
 3
 4           THE COURT:  This is a difficult case for the
 5   court, and I am, of course, guided by and bound by the
 6   provisions of 18 United States Code Section 5032.  The
 7   question is whether the transfer of Mr. Friedlander to adult
 8   court is in the interests of justice, and the statute sets
 9   forth certain factors that the court should consider.
10           There are those, such as the District Judge in
11   Wyoming in the BNS case, who feel that the policy behind the
12   adoption of the Juvenile Justice Act is that society's
13   interest in punishing criminal activity is outweighed by its
14   interests in rehabilitating the youthful offender.
15           I have also read Judge Burns' decision from the
16   District of Oregon, which I believe he decided in 1979.
17   Judge Burns observed that where a realistic chance for
18   rehabilitation exists, the balance ought not to tip in
19   recognition of the general societal interest subsumed in the
20   broadest sense of the word "justice."  I will review these
21   factors in this opinion, which will be the opinion of the
22   court.
23           I am, of course, first required to look at Mr.
24   Friedlander's age.  He is now seventeen, having reached that
25   age on September first of this year.  If the events took place
```

in February of 1987, Mr. Friedlander was then some sixteen and a half years old.

His social background has been difficult, to say the least. He lost his mother in a srious automobile accident and evidently one or two sisters in that same accident when he was aged three. Mr. Friedlander was seriously injured, and Dr. Wert raised questions as to whether or not there was brain damage. I believe Dr. Wert concluded based upon, I believe it was the Halstead-Reitan Test, that he felt there was evidence of brain damage on the left side, or left lobe brain damage. However, the subsequent CAT-scan tests did not confrim or establish brain damage and to the contrary, are negative.

Mr. Friedlander, the father, evidently did not provide adequate care for Mr. Friedlander. When he was approximately six, he was adopted by Mr. and Mrs. White, and he lived with them until approximately age sixteen, when he left the White home and went to live with his father, and that was not in Mr. Friedlander's best interests.

The Whites attempted to provide appropriately for Mr. Friedlander, both physically and through appropriate training, and treated Mr. Friedlander as much as they could as their own child. Mr. Friedlander did fairly well; his grades reflect he did average in school. But commencing at the time

1  that he left the White residence, his life was one of
2  non-conformance, some violations of the law, use of marijuana,
3  excessive consumption of alcohol, living more or less with
4  this girlfriend.
5      The offenses alleged here are the most egregious,
6  of course, that being the murder of Mrs. White and the
7  attempted murder and shooting of Mr. White.  While that is not
8  the sole concern of the court, it is in this case one that
9  greatly concerns the court.  There is no evidence in this
10 record that Mrs. White did anything but expend her best
11 efforts on behalf of Mr. Friedlander, no evidence whatsoever
12 that Mrs. White treated Mr. Friedlander other than she would
13 her own natural son.
14     I must consider Mr. Friedlander's prior record,
15 and he did develop a record and pattern of criminal offenses
16 as soon as he left the White home.  Those offenses are set
17 forth in the exhibit before the court, being Exhibit No. 14.
18     I accept Dr. Jorgensen's testimony, which is
19 really undisputed as to Mr. Friedlander's present intellectual
20 development.  His IQ ratings are somewhat low, and I think the
21 Doctor testified that they are below what Mr. Friedlander
22 could actually accomplish, and that is consistent with Mr.
23 Friedlander's grades.  He seemed to be able to keep up in
24 grade school and that portion of high school that he attended.
25 There was discussion that his IQ range might put him in the

1 simplistic category of mildly retarded, but the rest of the
2 evidence before the court does not indicate that in fact Mr.
3 Friedlander is retarded in fact, either physiologically or
4 psychologically.
5     I must also consider the nature of the past
6 treatment and Mr. Friedlander's response. He was handled, of
7 course, as a juvenile for these various offenses reflected on
8 his record, and his response was uncooperative, evidenced by
9 his violation and disregard of any of the terms of probation.
10     I likewise must consider the availability of
11 juvenile programs, and as Mr. Bechtolt points out, the
12 testimony of Mr. Shugruw indicates that whether Mr.
13 Friedlander is handled as a juvenile or as an adult that he
14 would probably be placed in the California Youth facility
15 under a contract with the State of California. I am satisfied
16 that the evidence shows that Mr. Friedlander has an
17 anti-social personality disorder as defined by the experts,
18 and that is typified by the evidence of his manipulation and
19 abuse of individuals without any particular guilt or remorse.
20     I have considered in making this determination
21 that there has been no evidence of guilt or remorse other than
22 the one statement that Mr. Friedlander made to Mrs. Peters.
23 The evidence shows that he has been out of control. He has
24 lived as an adult; however, in that adult lifestyle, his
25 conduct has evidenced lack of self-restraint and internal

1 control, including difficulty in controlling his temper. I am
2 satisfied from the testimony of the experts that this
3 anti-social personality disorder is a condition which is
4 difficult to treat. I am satisfied that long-term treatment
5 is required.
6     I conclude that because I feel that Mr.
7 Friedlander is not likely to submit himself to the normal and
8 social mores, the controls that exist, Dr. Jorgensen concluded
9 that Mr. Friedlander is probably a danger to society, and I
10 agree with Dr. Jorgensen's conclusion. I am satisfied that
11 there is a need for long-term supervision in Mr. Friedlander's
12 case, not only for the protection of society, and I feel
13 long-term supervision is required for that purpose, but also
14 to afford Mr. Friedlander the opportunity for rehabilitation.
15 I feel that Mr. Friedlander would be a risk to society if he
16 was merely treated as a juvenile and released at age
17 twenty-one.
18     As I have indicated, I feel that he is going to
19 be treated for rehabilitation purposes the same whether he is
20 transferred to adult court or is treated as a juvenile. I feel
21 that this case is an inappropriate one to have Mr. Friedlander
22 released at age twenty-one without any provisions for
23 supervision or guidance, such as would be the case if he were
24 treated as an adult and then paroled at an appropriate time.
25     I recall specifically the discussions I had with

Reproduced at the National Archives at Seattle

the various experts and those particularly with Dr. Wert, who I was impressed with. We talked about the penological philosophy that seems to exist today, that being of locking people up without any opportunity while they are in custody to earn credit or reward for sincere efforts on the part of the individual to rehabilitate himself and to prepare himself to be released to society. I think that philosophy is inappropriate.

Unfortunately, even under the Parole Commission procedures that now exist and would cover Mr. Friedlander, if he is convicted, the Parole Commission really doesn't give much credit to an individual on the determinate term for sincere efforts made by individuals to rehabilitate themselves or to prepare themselves for release to society.

There is, of course, under 4205(b)(2), under the Adult Sentencing Procedures, the opportunity of the court to give the Parole Commission complete freedom in making determinations as to a parole date for an individual such as Mr. Friedlander, and I think that since I find that it is necessary, not only for protection of society, but in Mr. Friedlander's best interests to have supervision after he is released, I conclude that the factors that I have discussed dictate that the interests of justice require that I transfer Mr. Friedlander as an adult to this court for prosecution as the Executive Branch feels is appropriate.

1   Those will be the findings of the court.
2
3
4   DATED: November 10, 1987
5
6
7
8   JUSTIN L. QUACKENBUSH
    U.S. District Court Judge
9
10
11   - - -
12
13
...
25